# CHARLESTON.

*Baxter et al v. Wade et al.*

(HOLT, JUDGE, Absent.)

Submitted January 24, 1894.—Decided April 4, 1894.

1. SALE—SHERIFF—AFFIDAVIT—DELINQUENT LANDS.

Where a sheriff, in making the affidavit required by statute to be appended to the list of real estate sold by him for the non-payment of taxes states that "I am not directly or indirectly interested in the purchase of any of said real estate," instead of stating that "I am not now, nor have I at any time been directly or indirectly interested in the purchase of any of said real estate," if objection is made before a deed is made, as required by statute, the sale should be set aside.

2. CONSTRUCTION OF STATUTES.

A statute ought to be construed as a whole, and each section should be so construed that, if possible, no clause, sentence or word should be superfluous, void or insignificant; and where a general intention is expressed, and the act also expresses a particular intention incompatible with the general intention, the

36

particular intention will be regarded as an exception, and will prevail.

3. SALE—DELINQUENT LANDS—CLERK—DEED.

The clerk of the Circuit Court is authorized to make the deed for land sold as delinquent for the non-payment of taxes, only when the clerk of the County Court is himself the purchaser; and, when a deed attempted to be made in pursuance of such delinquent sale by the clerk of the Circuit Court shows on its face that a person other than the clerk of the County Court was the purchaser, such deed is unauthorized and inoperative.

PAYNE & GREEN for appellants cited 36 W. Va. 613; 148 U. S. 172; 18 W. Va 764; Code (1887) c. 30, s. 18; 19 W. Va. 154; 34 W. Va. 207, 215; Code, c. 31, s. 25; 19 W. Va. 233; Id. 155; Cool. Tax. 344, 354, 355; Black. Tax-Tit. §§ 391, 451, 559, 569; Cool. Const. Lim. (5th Ed.) 454, *369; Black. Tax-Tit. (5th Ed.) §§ 756, 790, 847; Code, c. 31, s. 17, 18, 19; 19 Me. 368; 9 Gratt. 194; 30 W. Va. 178; 11 How. 414; Cool. Tax. 340; 6 Wall. 268; 2 Ohio 504; Dev. Deeds § 1385; 31 Ia. 578; 93 U. S. 390.

W. E. HAYMOND and LINN & BYRNE for appellees cited Code. c. 31, s. 25; 19 W. Va. 231; 10 Gratt. 436; Code, c. 31, s. 6; 34 W. Va. 215; 35 W. Va. 154; 36 W. Va. 613; Black. Tax-Tit. 415; Cool. Const. Lim. (6th Ed.) 447, 453, n. 1; Id. 452; 22 N. E. Rep. 1022.

ENGLISH, JUDGE:

This was a suit in equity brought in the Circuit Court of Braxton county by F. J. Baxter and P. B. Adams against L. M. Wade, C. K. Newlon, W. E. R. Byrne, and J. L. Carper. From the allegations of the bill it appears that on the 29th day of March, 1888, the plaintiffs became the owners of a tract of land containing about one thousand and sixteen acres, situated on Crites mountain in said county of Braxton, and that they derived their title by regular chain from one W. L. J. Corley;—that on the 25th day of November, 1889, the sheriff of Braxton county sold at a sale of said lands for the taxes of 1887 and 1888, a tract of eight hundred and eighty six acres, in the name of W. L. J. Corley's heirs, to the defendant L. M. Wade, for the sum of seventeen dollars and fifty nine cents; that on the

same day said sheriff sold to said Wade for the non payment of the taxes for the years 1887 and 1888 a tract as containing one hundred acres in the name of Andrew B. Stewart—this one hundred acres being part of the boundary of the said one thousand and sixteen acres;—that this same one hundred-acre tract had been sold by the sheriff in November, 1887, for the non-payment of the taxes for 1886, and was purchased by L. J. Berry for the sum of five dollars and fifty one cents;—that L. J. Berry received a deed for this one hundred acres bearing date on the 25th day of February, 1889, and he and his wife conveyed the same by deed of November 14, 1890, to the defendants C. K. Newlon and W. E. R. Byrne; that L. M. Wade also assigned to W. E. R. Byrne the benefit of his purchase of said one hundred acres. The defendants Newlon and Byrne, however, filed an answer in the case, disclaiming any interest in said one hundred acres of land.

The bill further alleges, that for the tract of land advertised and sold as containing eight hundred and sixteen acres C. Y. Byrne, the clerk of the Circuit Court of Braxton, made a deed to said L. M. Wade, on the 20th day of December, 1890, which was admitted to record on the 22d day of December, 1890, and that before the institution of this suit the plaintiffs tendered to L. M. Wade the sum of thirty two dollars and fifty five cents to redeem said two tracts of land, which said Wade refused, and again, on the 26th day of November, 1891, the plaintiffs tendered said Wade the sum of thirty eight dollars and sixty four cents in redemption of said land, which said Wade refused; and thereupon they paid said amount to the defendant C. K. Newlon—the clerk of the County Court of the county—who received the same without objection, and gave his receipt therefor.

The plaintiffs in their bill allege further, that said land was not returned as delinquent, as required by the statute, and that said sale made by the sheriff was irregular and void for the following reasons: because the said land was not returned delinquent within the time required by law, to wit, on or before the first Monday in June next succeeding the year for which said taxes were assessed; because

said delinquent list so returned by said sheriff does show
that the local description given in said list is erroneous
and incorrect; because the proper description of said land
is "Crites Mountain," and not "Ramp Run Birch," as shown
in said list; because the quantity is improperly stated in
said list to be eight hundred and eighty six acres; because
the said list does not show the estate held by W. L. J.
Corley's heirs in said land, nor the distance and bearing
from the court-house; because said list was not posted at
the front door of the court-house of Braxton county for the
time and in the manner prescribed by section 20 of chap-
ter 30 of the Code; because the County Court of Braxton
county never approved said list; or corrected the same, nor
directed the same to be recorded; because the clerk of said
court did not record said original list nor send certified
copies thereof to the auditor under the direction of said
court; because D. A. Berry, sheriff of Braxton county, did
not within ten days after receiving the list mentioned in
section 4 of chapter 31 of the Code of West Virginia make
out and cause to be published and posted an abstract of
said lists in the manner and for the time prescribed by sec-
tion 6, chapter 31 of the Code; because the list of real
estate within the county of Braxton sold on the 25th day
of November, 1889, for the non-payment of taxes thereon
for the year 1888 and purchased by individuals does not
show or have a column showing the district in which said
land is situated, as required by statute, and describes the
land as lying on "Ramp Run Birch," instead of "Crites
Mountain"—the proper description; because the provision
of section 49 of chapter 31 of the Code of West Virginia,
in regard to the sheriff publishing and posting a list of all the
sales made by him, etc., was not complied with by said D. A.
Berry, sheriff, and because said list and sale are otherwise
irregular; because the description of said land, as given in
said list, was not such description; as would give plaintiffs
notice, that their said tract of land had been returned
delinquent and sold for the non-payment of taxes thereon,
and said description was such as to mislead them, and did
mislead, in the payment of the taxes and in the redemption
of said land, and plaintiffs were ignorant of the fact, that

their said land had been returned delinquent, and sold, until the execution of the deed to defendant L. M. Wade for the same ; because on the 18th day of December, 1890, L. M. Wade caused a report of said land to be made by T. B. McLaughlin, surveyor of Braxton county, in which said surveyor erroneously described said land as a tract of eight hundred and eighty six acres situate in Holly District, on Ramp Run and "Crites Mountain," instead of a tract of "one thousand and sixteen acres situate in Holly district, on Crites mountain, excluding parts of two tracts of land patented to Addison McLaughlin"—its proper description.

The plaintiff's also filed an amended bill, in which they allege that D. A. Berry, sheriff of Braxton county, did not, on or before the first Monday in June next after such taxes were assessed, make out an alphabetical list by districts of the real estate, which was delinquent for the non-payment of the taxes thereon ; but that on the contrary said sheriff did not return said list until the 5th day of July, 1888, when said list should have been returned on the first Monday in June, 1888 ;—that said list so returned does not show the estate held by W. L. J. Corley's heirs in the eight hundred and eighty six acres of land (which in fact should be one thousand and sixteen acres) nor the distance and bearing from the court-house, nor does said list have any column for, or show why said land was returned delinquent ;—that said sheriff did not post at the front door of the court-house of Braxton county said pretended delinquent list two weeks before the session of the County Court of said county, at which he presented said pretended delinquent list for examination, nor did said sheriff, or any deputy for him, make to the County Court or to the clerk's office thereof or anywhere else a return showing that said list had been posted the two weeks required by law, and that their land never was returned delinquent for the non-payment of taxes for the year 1887 ;—that said sheriff did not make a return to the clerk's office of Braxton county or to the County Court of said county, or file such return in his own office, or in fact make any return of the time he received the list of real estate in Braxton county returned delinquent for the non-payment of taxes for the years 1887 and 1888 from

the auditor of the state of West Virginia, nor did said sheriff make such return to any other offices; that he within ten days after receiving said list of delinquent lands from the auditor did not make out and cause to be published an abstract of such list in some newspaper published in Braxton county for four successive weeks prior to the 25th day of November, 1889, the day of said pretended sale of said land, which returns and records plaintiffs' aver are required by statute, and necessary, before said sheriff could make any sale of said land.

In their second amended bill the plaintiffs allege that the deed made by C. Y. Byrne, clerk of the Circuit Court of said county, to L. M. Wade for said land under said pretended sale was void and conveyed no title to said Wade, because said clerk was not authorized by law to make and execute said deed, it not appearing from the records that the clerk of the County Court was a purchaser at said sale; —that said sheriff did not append to the list of sales so made by him on the 25th day of November, 1889, and returned by him to the clerk of the County Court of Braxton county an affidavit in form or effect as provided by law;— that the pretended affidavit appended to said list of lands so sold as delinquent at said sale does not state, nor did said sheriff swear, that he was "not now, nor have I at any time been, directly or indirectly interested in the purchase of said real estate" so sold;—that the words "now, nor have I at any time been," are not in said pretended affidavit so appended to said lists of said sale;—that said words are material and necessary, and their omission from said affidavit renders such sale void.

And they further allege, that having a right to redeem said land, they on the 26th day of November tendered to the defendant L. M. Wade thirty eight dollars and sixty four cents, which they aver is the amount of purchase-money, including the fee for receipt and all additional taxes and interest thereon and costs of the surveyor's reports and interest thereon paid by said L. M. Wade by reason of his said purchase of said real estate and paid by him thereon since said purchase, which sum said Wade refused to accept and receive in redemption of said real estate; that

thereupon he paid said sum to the clerk of the County Court of said county and took his receipt therefor, as before stated.

The defendant L. M. Wade demurred to the plaintiffs' original and amended bills on the grounds that the alleged irregularities in the proceedings of the sheriff in making sale of said lands were not of such a character as to vitiate or render void said sales. Said defendant also answered said bills, putting in issue the allegations therein contained; and as to the allegation in the second amended bill with reference to the defect in the affidavit appended to the list of real estate sold by said sheriff on the 25th day of November, 1889, and returned by him to the clerk of the County Court of Braxton county said respondent denied the allegation, that said affidavits were not in form or effect as required by law, and also denied the materiality of such irregularities, if irregularities they could be considered. Depositions were taken in the cause by both plaintiffs and defendants; and a decree was rendered by the court dismissing the plaintiffs' bill. From this decree this appeal was applied for and obtained.

The first error assigned by appellants is that said sales were void, because the sheriff in making his oath to the lists of said sales failed to state in either of said oaths, that he had not at any time been directly or indirectly interested in the purchase of any of said real estate; that this omission is material and renders the sales void. The reason for the requirement that such an affidavit shall be appended to such list is found in section 9 of chapter 31 of the Code, where it is provided that: "No sheriff, deputy sheriff, collector or other officer who shall return any real estate delinquent for the non-payment of the taxes thereon, or who shall receive a list thereof under the provisions of the fourth section of this chapter, or who shall sell by himself, his deputy or agent, or who shall be the deputy of an officer making such sale, shall directly or indirectly purchase any real estate so sold or be in any way directly or indirectly interested with any other person in such purchase. Every person violating this section shall forfeit one hundred dollars for each offence, and the sale shall be absolutely void, and

the title to the real estate sold shall remain in the person in whose name the same was sold." Section 13 of the same chapter provides that there shall be appended to such list an affidavit in form or effect as follows (giving the form of the affidavit) in which he is required to swear that "I am not now, nor have at any time been directly or indirectly interested in the purchase of any of said real estate." And yet, with this affidavit before him, the sheriff, in this instance, left out the words, "now, nor have I at any time been," in making each of said affidavits.

This identical question was before this court in the case of *Hays* v. *Heatherly*, 36 W. Va. 613 (15 S. E. Rep. 223). In that case the sheriff appended an affidavit to the list of real estate sold in exactly the same words as in this case; and it was there held that such sale was absolutely void, and that if after the expiration of the year to redeem, but before the purchaser has obtained his deed, the owner of the land offers to redeem, and the purchaser refuses, and afterwards obtains a deed from the clerk, a bill brought to set aside said tax-deed alleging the above facts and accompanied with the necessary money is good on demurrer.

Now, while it is true that in the case under consideration the redemption-money was not tendered until after the deed had been made by the clerk of the Circuit Court to the defendant Wade, yet the fact remains that the sale was void by reason of this material and vital defect in the affidavit; and, if the sale itself was void, the conveyance made in pursuance of a void sale would confer no title upon the purchaser, who could only demand and be entitled to a deed under a valid sale. In this case there was not only one affidavit, but two, in which this very suggestive omission occurs. As it would appear, to give the inference double strength he reiterates the omission and strengthens the conclusion, that at some other time he had been directly or indirectly interested in the purchase of said land. To allow such an affidavit as this would defeat the plain object of the statute, which is to prevent sheriffs from speculating in these land-sales. The particular intention expressed in section 9 of said chapter 31 of the Code is to render a sale of delinquent real estate made by a sheriff or his deputy,

who is directly or indirectly interested in the purchase of such real estate so sold, absolutely void.

Section 25 provides generally, that "no irregularity, error or mistake in the delinquent list or in the return thereof or in the affidavit thereto or in the list of sales filed with the clerk of the County Court or in the affidavits thereto," *etc.*, "shall after the deed is made invalidate or affect the sale or deed." Now, in the case of *Jackson* v. *Kittle*, 34 W. Va. 207 (12 S. E. Rep. 434) this Court held that a statute ought to be construed as a whole, and each section should be so construed that, if possible, no clause, sentence or word should be superfluous, void or insignificant; and where a general intention is expressed, and the act also expresses a particular intention incompatible with the general intention, the particular intention will be regarded as an exception and will prevail. If the sheriff is interested in the purchase, and the sale is therefore void, how can the void sale be cured by deed made in pursuance thereof? Suppose the sheriff, instead of omitting the words he did omit from the affidavit, had sworn therein that he had at one time been directly or indirectly interested in the purchase, to the amount or extent of one fourth or one half Could that be regarded as an irregularity, error or mistake in the affidavit, such as is spoken of in section 25 of said chapter, as not, after a deed is made, to invalidate or affect the sale or deed? Certainly not. The affidavit in the case of *Hays* v. *Heatherly* was precisely the same as it is in this case, and in that case the language of the opinion on this point is as follows: "Yet, instead of that (making the proper affidavit) he swears and appends the following: 'And that I am not directly interested in the purchase of any of said real estate'—just as much, under the circumstances, as to say, 'I have been at another time interested, and am still indirectly interested, in the purchase,' *etc.*"

There may be some overdrawn nicety in some of the negative preguants to be met with in the common-law books of pleading and practice, but there is nothing of the kind in this, as we have to look at it on demurrer. It is a downright, common sense inference. The requirement, that he shall state, that he is not indirectly interested has been in

the form of oath prescribed for fifty years and more; and if the sheriff had at any time been interested, although not now, or had been or was indirectly interested, although not directly, or if any deputy who did not make the sale was directly or indirectly interested, then section 9, c. 31, declares that such "sale shall be absolutely void, and the title to the real estate sold shall remain in the person in whose name the same was sold." Could it be more explicit, or the intention of the statute more manifest, that the title should remain where it was, if the sale itself was void, and that it never was intended that a deed should be made in pursuance of such sale, which in such circumstances is declared absolutely void?

Again, the deed in this case purports to have been made by C. Y. Byrne, clerk of the Circuit Court, which is authorized by the statute only where the clerk of the County Court is himself the purchaser. When, however, we look at the recitals of the deed, it is stated on the face of the deed that the defendant L. M. Wade became the purchaser of said tract of land; and section 19 of chapter 31 of the Code provides that such deed shall be made to the purchaser himself, or to such person as he may direct, either in writing acknowledged as a deed is required to be acknowledged, or by his joining therein, "* * * or if he assigned his purchase during his lifetime by a writing such as is hereinbefore mentioned it shall be made to such assignee."

Now, the general rule is that, when a statute requires anything to be done it must be done in accordance with the directions of the statute, or it is not done at all. How, then, does it appear that C. K. Newlon, clerk of the County Court, was in any manner connected with the purchase of this tract of land? Certainly not by the recitals of the deed, for by them it is distinctly recited that L. M. Wade became the purchaser. It is true that said Wade introduces himself as a witness and in his deposition states that he purchased the land in controversy at the delinquent sale, but that C. K. Newlon was interested; that he was an equal silent partner in the purchase; and that he was the County Court clerk at the time of the sale and is yet. But

the question arises : Can he be allowed to contradict the recitals of his own deed ?

Herm. Estop. p. 754, § 615, says : "Where a party solemnly admits a fact by deed under his hand and seal, he is estopped, not only from disputing the deed itself, but every fact which it recites." So that if the clerk of the Circuit Court derived his only authority to make this deed from the fact that C. K. Newlon, clerk of the County Court, was the purchaser, by reciting in his deed that L. M. Wade was the purchaser, he is estopped from showing that said Newlon was the purchaser. The same author, in section 613, says : "A recital in a deed of the existence of a mortgage upon the premises, and that the grantee is to pay the debt, is conclusive evidence against the grantee of the execution of the mortgage. So, a party claiming under a deed which recited the existence of a mortgage is estopped from denying that there is such a mortgage ;" citing numerous authorities. And the author says in the next preceding section : "There is, however, a marked distinction between general recitals in a deed and the recital of a particular fact. The former, as a general thing, does not conclude a party, while the latter works an estoppel."

In this deed is the recital, not only of a particular fact, but of a material fact, to wit, that L. M. Wade was the purchaser. The statute provides a mode, as above stated, if C. K. Newlon was the purchaser of one half of the land sold as delinquent, as aforesaid, to confer authority upon the clerk of the Circuit Court to convey the same to L. M. Wade. The statute is positive. The deed must be made to the purchaser himself, or to such person as he may direct in writing acknowledged as a deed is required to be acknowledged. The form of the deed is prescribed in the Code, which is to be made by the clerk. Section 19, c. 31. And on page 216, in prescribing said from, it is provided, in brackets, that : "If the purchaser has assigned his purchase by such writing as is hereinbefore stated, or joins in the deed to his assignee or has died and the grantee in the deed be the assignee of the purchaser, or his heir (or heirs) at law, or devisees, here recite the facts showing why the deed is not made to the purchaser and

the fact that the purchaser joins in the deed if he does so."

The deed, in this case, from C. Y. Byrne, clerk of the Circuit Court, contains, however, no such recital but states that L. M. Wade was the purchaser. If C. K. Newlon, clerk of the County Court, was the purchaser, the clerk of the Circuit Court had no authority to make such deed to L. M. Wade without such writing properly acknowledged by said Newlon ; and if Wade was the purchaser, said Circuit Court clerk had no authority to make such deed. He has recited in the deed that said Wade was the purchaser, and said Wade has accepted the deed in that form, and they are bound by the recitals. In Hammond's Blackstone (Comm. c. 20, p. 295) the author, speaking of alienation by deed, says, among other things : "It is the most solemn and authentic act that a man can possibly perform with relation to the disposal of his property ; and therefore a man shall always be estopped by his own deed, or not permitted to aver or prove anything in contradiction to what he has once so solemnly and deliberately avowed." In the case of *Keene* v. *Houghton*, 19 Me. 368, it was held that "a sale not in conformity with the statute gives no title, and an agreement with the collector of taxes to pay the amount bid by another, and receive a deed by way of substitution, is void for want of consideration."

For these reasons, my conclusion is that no proper deed has yet been made, by any officer authorized so to do, for said land ; and, objection having been interposed before the execution of a proper deed, under the ruling of this Court in the case of *Jackson* v. *Kittle*, 34 W. Va. 207 (12 S. E. Rep. 484) in which the affidavit to the list of sales was in the same language as in this case, the sale should be set aside. In the case under consideration it appears from the record that C. K. Newlon was clerk of the County Court at the time the sale was made, and also at the time the deed was made by the clerk of the Circuit Court; but on the face of that deed, instead of its appearing that C. K. Newlon was the purchaser—which fact, alone, would authorize said Circuit Court clerk to make the deed—it appears affirmatively on the face of the deed that another and different man, to wit, L. M. Wade, was the purchaser.

For these reasons my conclusion is that no proper deed appears to have ever been made for said land; and under the ruling of this Court in the case of *Hays* v. *Heatherly*, 36 W. Va. 613 (15 S. E. Rep. 223) in which the affidavit appended to the list of sales by the sheriff was in the same words as the one appended by the sheriff in this case, the sale made of the tract of land in the bill mentioned must be regarded as void, the deed set aside, the decree complained of reversed, and the cause remanded, with costs to the appellants.

---

BRANNON, PRESIDENT:

I question that feature of the opinion in this case which holds the deed void because made by the Circuit clerk. As it is not controlling in the decision I have not given it much thought; but it strikes me that the statute providing that, where the Clerk of the County Court is purchaser, the deed shall be made by the clerk of the Circuit Court, means that, though the execution of the deed is a ministerial act, yet, if interested in any way under the purchase, the County Court clerk shall not act. . Though not purchaser on the face of the sale-list, yet, if the County clerk be a silent co-purchaser, he has in equity an interest enforceable, as potent to sway his action from the proper line as the legal interest if the clerk were purchaser on the record. If so, this case shows such interest in the County Court clerk as to warrant the Circuit Court clerk's execution of the deed. And, moreover, what difference to the former owner which clerk makes the deed? Its execution by the one does not prejudice him any more than would its execution by the other.