# CHARLESTON.

JAMES W. JARRETT *v.* MARY E. KIMBROUGH.

Submitted February 1, 1921.   Decided February 8, 1921.

TAXATION—*Tax Deed Held Not Void for Misnomer of Owner.*

A tax sale and deed thereon based are not rendered void
and subject to annulment because the owner's name appears in
the delinquent list, and in the sheriff's published sales list
of property to be sold by him for non-payment of taxes, as
Norena Lambert, instead of Norma E. Lambert, the correct
name; such misnomer being an irregularity cured by sections
6 and 25, chapter 31, Code.

(MILLER, JUDGE, dissenting.)

Appeal from Circuit Court, Putnam County.

Suit by James W. Jarrett against Mary E. Kimbrough to
cancel a tax deed. Plaintiff's bill was dismissed on demurrer,
and he appeals.

.*Affirmed.*

*James B. Menager,* for appellant.
*C. E. Kimbrough* and *D. L. Salisbury,* for appellee.

LYNCH, JUDGE:

The decree reviewed for error denied the relief prayed for,

dismissed plaintiff's bill upon demurrer, after his refusal to avail himself of the leave granted to amend, and the cause is here for the correction of the error so committed, if any be found in the record. The purpose of the suit is the cancellation of a tax deed for land sold at a sheriff's sale for taxes assessed against it in the name of plaintiff's grantor, Norma E. Lambert. Her deed to him bears the date of July 30, 1913, at which time the land was delinquent for the taxes charged against it and unpaid for the year 1911. At the sale made in 1913, several months after plaintiff obtained his deed, Mary E. Kimbrough became the purchaser, and to her the sheriff conveyed the land in February, 1917, and she promptly caused the deed to be admitted to record in the proper office and county. Shortly thereafter plaintiff brought this suit to cancel the deed as a cloud upon his title. The only ground relied on for cancellation is that said land was returned deliquent, advertised for sale and sold by the sheriff in an entirely different name from that of Norma E. Lambert, who was the owner of said property before it was conveyed to the plaintiff, and in which name it was, assessed for taxation prior to the sale to plaintiff, to-wit, in the name of Norena Lambert, and not in the name of Norma E. Lambert. In other words, though properly assessed for taxation in the correct name of the owner, as alleged in the bill, the land was returned delinquent and advertised for sale and sold as the land of one who bears the same family name, but whose christian name differs to some extent from that of the person who, at the date of the delinquency, was the true owner of the property; wherefore, the only irregularity affecting the validity of the sheriff's deed to defendant is the variance between the assessment roll and the delinquent list and published advertisement of sale. The sole question presented for discussion and decision, therefore, is whether a sheriff's sale is invalidated by the discrepancy in the names occurring in the tax proceeding based upon a proper assessment.

Although the bill purports to file certified copies of Mrs. Lambert's deed to the plaintiff and the sheriff's deed to Mary E. Kimbrough as exhibits Nos. 1 and 2, neither of them is in the record; nor is there any other exhibit of any kind in it.

The record consists of nothing more than the process to answer, the return of service, bill of complaint and order filing it, the demurrer to the bill and order filing it, and the final order denying relief and dismissing the cause.    There is no exhibit showing anything respecting the manner of assessment or any irregularity in it of any kind—nothing from which can be seen or even inferred the existence of any defect in the tax proceeding leading up to and including the assessment of the land for taxation purposes.    The bill does, however, as noted, aver the regularity of the enrollment of the land in the name of Norma E. Lambert, the grantor of plaintiff, prior to her conveyance, to him.    With these allegations in mind it must be assumed that the taxes, to enforce payment of which the sale became necessary, were assessed in the name of Norma E. Lambert, whose duty it was to pay them; and also that whatever irregularity exists, if any sufficient to avoid the deed to the purchaser at such sale, occurred subsequent to the assessment of the unpaid taxes for which the sheriff sold the land.

The use of the term, Norena Lambert, instead of the true name, Norma E. Lambert, in the sheriff's published list of property to be sold by him for unpaid taxes, is an irregularity in the proceedings which is cured by section 6, ch. 31, Code. That statute provides that "no sale of any such real estate as is sold by such sheriff, as aforesaid, or deed therefor to the purchaser thereof, shall be, in any way or manner, affected by reason of any mistake in the publication or posting of such list or notice, * * * as to the name of the owner, * * * or otherwise."    It expressly includes within its curative function the alleged defect with which we are now dealing—a "mistake in the publication as to the name of the owner."    In support of this conclusion it is necessary to cite as additional authority only *Hamill* v. *Glover,* 74 W. Va. 152, where the notice of sale stated the owner's name to be V. May Fitchner instead of V. Mae Fitchner; *Gauley Coal Land Co.* v. *Koontz,* 77 W. Va. 583; and *Matheny* v. *Jackson,* 83 W. Va. 553.

But the bill further charges the existence of the same misnomer in the delinquent list and return thereof recorded in the office of the clerk of the county court.    With respect to

such alleged irregularity, section 25, ch. 31, Code, provides: "And no irregularity, error, or mistake in the delinquent list, or the return thereof, or in the affidavit thereto, * * * shall, after the deed is made, invalidate or affect the sale or deed." Clearly the misstatement of Mrs. Lambert's name falls within the broad and inclusive language of the statute, and constitutes an irregularity within its meaning. *Friedman* v. *Craig,* 77 W. Va. 223, where the owner's name appeared in the delinquent list as Joseph Fredman, instead of Joseph Friedman.

We are not now dealing with a misstatement or misnomer in the assessment list, which is of a different and more serious nature. In order to support a tax sale and deed based thereon, "there must be a valid assessment—one that will impart full notice to the owner or taxpayer and make the proceedings due process of law." *Male* v. *Moore,* 70 W. Va. 448. In the case cited, the assessment relied on was in the name of Hoonbrook, when the owner's true name was Hornbrook, and the court held that to be such a variation as avoided the sale, saying at page 449: "Of course, errors in the delinquent list and subsequent proceedings are cured after the deed is made; but the error in the assessment is covered by no such curative statute." There is a similar holding in *Collins* v. *Reger,* 62 W. Va. 195, where the owner's name was Martha Helmick, but the assessment list incorrectly stated it to be Martha Hedrick. However, even where assessments are involved, not every departure from the true name will avoid the sale, for in *Friedman* v. *Craig,* cited, an assessment in the name of Joseph Freedman was held not to be a material departure from Joseph Friedman, the correct name.

It may be urged by appellant, however, that even though the statute quoted appears to be sufficiently broad to cure the mistake in the delinquent list, yet where the variation from the true name is so material as to be seriously misleading, it will not be held and considered as falling within its curative provisions. The statute, however, imposes no such limitation or restriction. Its language is general and inclusive. But in support of his contention, appellant may cite the first portion of the same section (section 25, ch. 31), which vests in a purchaser at a tax sale, who has obtained and recorded his tax

deed, such right, title and interest in and to the real estate sold, as was vested in the person charged with the taxes thereon, "notwithstanding any irregularity in the proceedings under which the same was sold, not herein provided for, unless such irregularity appear on the face of such proceedings of record in the office of the clerk of the county court, and be such as materially to prejudice and mislead the owner of the real estate so sold, as to what portion of his real estate was so sold, and when and for what year or years it was sold, or the name of the purchaser thereof; and not then unless it be clearly proved to the court or jury trying the case, that, but for such irregularity, the former owner of such real estate would have redeemed the same."

But to this contention two answers may be made: (1) That the irregularities to which the quotation refers are only those "not herein provided for," whereas there is in the same section express special provision for irregularities in delinquent lists and returns, which we have heretofore quoted and discussed; (2) the irregularity involved in this case is not one that is misleading in any of the three aspects contemplated by the statute, i. e., as to the portion of the real estate sold, the year or years during which the delinquency occurred, and the purchaser's name, but only as to the name of the owner. Hence there is no basis justifying resort to the provisions just quoted. And even if there were, plaintiff has not, in his bill, met the final requirement of that portion of the statute, by an allegation to the effect that, "but for such irregularity, the former owner of such real estate would have redeemed the same."

But as a matter of fact, the designation, Norena Lambert, is not seriously misleading. The family name is the same in both instances, and there is such similarity between the christian names as to arrest attention and lead to an investigation to determine the identity of the taxpayer. And it is only fair to assume, from the allegations of the bill, that the description of the property is the same in the assessment book and on the delinquent list—a fact that should tend to remove any uncertainty that might result from the misnomer.

Of course, although that part of section 25, relating to delinquent lists, is broad and apparently all-inclusive, there prob-

ably are some situations in which it would not apply to protect the tax purchaser, as, for instance, in case of a total failure, as distinguished from an irregular attempt, to conform to correct procedure in delinquency proceedings. *Ritchie Lumber Co.* v. *Nutter,* 66 W. Va. 444; *Morgan* v. *Moore,* 69 W. Va. 611; *Shrewsbury* v. *Horse Creek Coal Land Co.,* 78 W. Va. 182. But we merely mention this in passing, and express no opinion as to what might constitute possible defects in procedure so serious and vital as to withdraw them from the category of irregularities within the meaning of the statute.

For these reasons, therefore, we affirm the decree of the circuit court dismissing plaintiff's bill.

*Affirmed.*

MILLER, JUDGE, (*dissenting*) :

The demurrer to the bill admits as true that the land involved was returned delinquent and sold in the name of Norena Lambert instead of Norma E. Lambert, in whose name it was assessed for taxation. The error occurred in the delinquent return and it was carried into the sales return etc. I think this was a fatal mistake in the delinquent list, and according to our prior decisions amounted to no return *quo ad* the land of plaintiff. True, the mistake occurs in the Christian name, but "Norena" is not the equivalent of "Norma E." The mistake was such as might mislead and deceive plaintiff, the purchaser from Norma E. Lambert. The fact that the mistake occurred in the Christian name instead of the surname is not material if it was such as might mislead or deceive the owner of the land. In the case of *Friedman* v. *Craig,* 77 W. Va. 223, cited in the opinion of the court, the delinquent return contained the name of "Joseph Fredman," and the assessment was in the name of "Joseph Freedman," instead of the true name of the plaintiff, "Joseph Friedman." No one could have been misled or deceived by this mistake in the delinquent return. In the case of *Collins* v. *Reger,* 62 W. Va. 195, we decided that the assessment and sale of land in the name of "Martha Hedrick" of land belonging to "Martha Helmick" was void after deed. In *Male* v. *Moore* we held that the assessment and sale of the land of "Hornbrook" in the name of "Hoonbrook" was a sub-

stantial departure from the true name and did not import full
notice to the owner or taxpayer and make the proceedings due
process of law. It amounted to no delinquent return of the
owner's land, and the omission was not cured by the statute.
As is said in *Ritchie Lumber Co.* v. *Nutter,* 66 W. Va. 444, the
acts to be performed antecedent to the tax sale are in their
nature jurisdictional, and are generally essential to confer due
process of law; they are in a sense analogous to judicial pro-
cess, or summons, by attachment, or to judicial proceedings in
rem, the last one of those antecedent acts, intended to give no-
tice to the land owner and others interested in the payment of
taxes, being the public sale of the land at a certain time and
place, designated by law. It is conceded that the assessment
must be valid and in the name of the owner, so as to import
full notice to the owner, and it is so decided in *Male* v. *Moore,
supra.* The assessment and delinquent return are most essen-
tial to this end, and I can not see how a defect in the assess-
ment which would defeat a deed after sale would not do the
same thing if carried into the delinquent return, the next im-
portant step in due process. In *Plaster* v. *Harmon,* 70 W. Va.
634, we decided that the absence of the proper affidavit by the
sheriff at the time of presenting the delinquent return to the
county court was a fatal omission, which would render a tax
sale depending thereon void after deed. In *Wilkinson* v.
*Linkous,* 64 W. Va. 205, we held that though the oath of a tax
return is subscribed by the sheriff, but it does not appear that
the oath was subscribed by a person authorized to administer
oaths as required by the statute, is absolutely void.

Applying the rules heretofore adopted by this court, I think
the decree ought to be reversed.